GOLDBERG and wife, Respondents, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*April 8—May 4, 1920.*

*Witnesses: Examination: Refreshing memory of witness by handing him his signed statement: Disclosure of contents of statement by witness: Effect: Voluntary statement of witness as ground for new trial.*

In an action against a railroad company for the loss of support occasioned the plaintiffs by the killing of their son, the inquiry as to whether a train came to a stop at a certain crossing being material, and the engineer, called adversely by the plaintiffs, having testified that he did not stop his train at the crossing, it was proper for defendant's counsel, for the purpose of refreshing the memory of the witness, to exhibit to him his signed statement made shortly after the accident; and the volunteered remark of the engineer, that the statement said he stopped, not being attributable to defendant's conduct of the examination, the court erred in awarding a new trial to plaintiffs solely on the ground of the remark of the witness.

APPEAL from an order of the circuit court for Marinette county: W. B. QUINLAN, Circuit Judge. *Reversed.*

This action was brought by *Isaac* and *Tobia Goldberg* to recover for the loss of support occasioned by the death of their son, Abraham Goldberg, an unmarried man twenty-six or twenty-eight years of age, living with them in the city of Marinette. He was run over and killed by one of defendant's switching trains in the vicinity of the Division-street crossing in the city of Marinette. No one saw the deceased when he was struck by the train. The accident occurred about 3:30 p. m. on February 16, 1917. He was

last observed walking south upon the west side of Division street, north of the crossing, and had not then reached the track of the St. Paul road, which is fifty-two feet from the Chicago & Northwestern tracks. A train consisting of an engine and twelve loaded freight cars, the cars being ahead of the engine, was being pushed westwardly from one switch to the other within the switching yards. The train passed over Division-street crossing, and, after it had passed, a man named Nelson found the body of the deceased at the Excelsior switch, 500 feet west of the Division-street crossing. Two sectionmen were called by Nelson to the place where the body was found, and as they ran to the Excelsior switch they observed the marks in the snow of the dragging of the body. Afterwards, it is claimed, they with others walked to the crossing and found that the first marks of the dragging body began at a point between fifty and one hundred feet west of the crossing, but observed no marks or other evidence of the accident from that point to the crossing.

Two causes of action were alleged by the plaintiffs: the first alleging in substance negligence on the part of the defendant, the second gross negligence. The second cause of action was withdrawn at the conclusion of the plaintiffs' evidence. The action was tried as a crossing-case accident pursuant to sec. 1809, Stats., governing the operating of trains over public grade crossings. A motion for nonsuit at the conclusion of plaintiffs' testimony was denied.

The issues were submitted to the jury by a special verdict, the first question of which was: "Was Abraham Goldberg killed by being struck by defendant's train on the Division-street crossing on February 16, 1917?" The jury returned an answer "No" to this question, and were instructed by the court that they should not give consideration to the other questions of the verdict in the event of the first question being answered in the negative. The defendant moved for judgment in its favor upon the verdict and the uncontra-

dicted evidence.    The plaintiffs moved the court to set aside
the verdict and grant a new trial upon the grounds of
(1) erroneous admission of evidence; (2) erroneous ex-
clusion of evidence; (3) error in instructions.

Defendant's motion was denied and plaintiffs' motion
granted and a new trial ordered upon the ground of the
improper admission of the evidence of the witness Joseph
Williams.    Defendant appeals from the order granting a
new trial.

R. N. Van Doren of Milwaukee, for the appellant.

For the respondents there was a brief by Martin, Martin
& Martin, and oral argument by Gerald F. Clifford, all of
Green Bay.

SIEBECKER, J.    The plaintiffs alleged and claimed at the
trial that the decedent was killed upon the Division-street
crossing; the defendant claimed that the evidence showed
that he was killed at a place on the track from fifty to
ninety feet west of this crossing.    The jury found that he
was not killed at the crossing.    This issue of fact is all-
important in determining the rights and liabilities of the
parties.    The inquiry of fact whether or not the train came
to a dead stop while passing over the crossing was a material
inquiry by the jury in answering question No. 1 of the
special verdict.    The trial court held that in the light of the
statement of defendant's counsel in opening the case to the
jury that the defense would prove that the train came to a
dead stop and while so stopping decedent manifestly at-
tempted to go between the cars and was thus caught and
killed, under the circumstances detailed hereafter, it was
prejudicial error for the engineer, Williams, to state to the
jury that he, in a signed and written statement on the day
after the accident, had stated that the train came to a stop,
although in immediate connection with this statement while
on the witness stand he testified that such statement was in-
correct and that the train in fact did not come to a dead

stop in passing over the crossing. Williams was called by plaintiffs for cross-examination at the trial under sec. 4068, Stats., and testified in answer to inquiries propounded by plaintiffs' counsel that he positively recollected that his train did not stop in passing over the Division-street crossing. Before leaving the witness stand defendant's counsel asked him if he might be mistaken in so testifying, to which the witness replied: "Did not come to a dead stop." Defendant's counsel then propounded the following questions, which were answered as follows:

"*Q.* Did you make a statement shortly after the accident, Mr. Williams? *A.* Yes, sir. *Q.* I want to show you this Exhibit 5, Mr. Williams, and ask you if that is your signature there? *A.* Yes, sir. *Q.* Will you just look at that, please, and refresh your recollection from that, and see whether you are mistaken or not? *A.* I might be; I am pretty sure it didn't come to a full stop. *Q.* Well, read that and let us know whether that refreshes your recollection, Exhibit 5? *A.* It says here I did. *Q.* Now, does that refresh your recollection on the matter, or doesn't it? *A.* I can't remember or recollect it."

The witness then testified that the statement appeared to have been signed February 17th; that he thought that this was the next day after the accident; that the facts were then fresh in his mind. After having thus read the statement then and there he declared to the jury: "I am positively sure that I did *not* come to a full stop." Objection to all this testimony was entered and a motion made to strike it out as self-serving statements. This motion was denied.

The trial court says that the statement was not offered by the defendant "nor was the examination had for the purpose of impeaching the witness, *but merely for the purpose of refreshing his recollection,*" and that defendant's counsel did not refer to this statement in his argument to the jury. This proceeding shows defendant's counsel exhibited to the witness the written statement for the purpose of having him refresh his recollection, and that the above-quoted

answer, *"It says here I did,"* was not responsive to the question asked him. The witness volunteered the statement. No request was made by plaintiffs' counsel specifically calling attention to it and to have it stricken; his motion was to strike all this testimony as self-serving statements. We are persuaded that it was proper for defendant's counsel to call the witness' attention to this signed statement in the manner he did for the purpose of refreshing his recollection, and that the witness' disclosure of this much of the writing is not attributable to defendant's conduct of the examination. The question recurs, Did the court commit prejudicial error in granting a new trial upon the ground that such statement operated to the plaintiffs' prejudice? We cannot discover any prejudicial effect of this mere voluntary statement by the witness when considered in the light of his repeated statements to the jury in connection therewith that he was positive the train did not stop while passing over the crossing. It is obvious that this bit of testimony was not singled out by the jury for reliance to answer the first question in the negative. The positive denials by Mr. Williams regarding it and the other evidentiary facts in the case clearly refute such a conclusion. It is manifest that the court erred in awarding a new trial solely on the ground of this statement of Williams. It is considered that the order awarding a new trial must be reversed.

*By the Court.*—The order appealed from is reversed, and the cause remanded to award judgment in accordance with the verdict.